## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 8:19-cv-02441 |
| v. | ) | |
| | ) | |
| PIETRO VINCI | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO THE COMPLAINT

Defendant Pietro Vinci ("Defendant" or "Vinci") answers the Complaint filed by the United States America (the "Government") as follows.

The unnumbered introductory first paragraph of the Complaint states legal conclusions not requiring a response.  Out of an abundance of caution, the allegations are denied.

The headings used throughout the Complaint state legal conclusions not requiring a response.  Out of an abundance of caution, the allegations in the headings are denied.

1.      The allegations are denied for lack of sufficient information to form a belief therein.

2.      The allegations are admitted.

3.      The allegations are admitted.

4.      The allegations are admitted.

5.      The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied as applied to Vinci.

6.      The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied as applied to Vinci.

7.      The paragraph states legal conclusions not requiring a response.  To the extent these allegations apply to Vinci, the allegations are denied for lack of sufficient information to form a belief therein.

8.      The allegations regarding Vinci's place of birth in Italy and his move to Venezuela in 1955 are admitted.  The allegation that Vinci earned income in Venezuela from his auto parts business is admitted.  The remainder of the allegations in the paragraph are denied.

9.      The allegation regarding Vinci's residence in the United States between 2005 and 2009 is admitted.  The remainder of the allegations in the paragraph are denied.

10.     The allegation that Vinci has never worked or earned a salary in the United States is admitted.  The remainder of the allegations in the paragraph are denied.

11.     The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied.

12.     The allegation that Vinci applied to participate in the Internal Revenue Service ("IRS") Offshore Voluntary Disclosure Initiative ("OVDI") is admitted; however, Vinci was timely precleared to enter the 2011 program, not the 2012 program.  The remainder of the paragraph states legal conclusions not requiring a response.

13.     The allegation is admitted; however, the letter was submitted based upon the best available knowledge of the taxpayer at the time it was submitted in 2011, some of which was proven to be incorrect based upon more accurate information later received from Vinci's financial institutions and provided to the IRS.

14.     The allegations are denied.

15.     Due to the redaction of the account numbers, the allegations regarding the account numbers are denied for lack of sufficient information to form a belief therein. The remainder of

2

the allegations in the paragraph are admitted.

16.     The allegations are admitted.

17.     The allegations are denied for lack of sufficient information to form a belief

therein.

18.     The allegations are denied for lack of sufficient information to form a belief

therein.

19.     The allegations are denied for lack of sufficient information to form a belief

therein.

20.     The allegation that Vinci received assistance from counsel in establishing the

Mosquetero structure is admitted. The remainder of the allegations in the paragraph are denied.

21.     The allegation that the Mosquetero accounts were held in a Scottish corporation

and were related to a trust with a trustee located in Switzerland are admitted. The remainder of

the allegations in the paragraph are denied for lack of sufficient information to form a belief

therein.

22.     The allegation that Vinci was the ultimate beneficial owner of the Mosquetero

accounts is admitted.  The remainder of the allegations are denied for lack of sufficient

information to form a belief therein.

23.     The allegations in the first sentence are denied.  The allegations in the remainder

of the paragraph, including redacted and partial account numbers, are denied for lack of

sufficient information to form a belief therein.

24.     The paragraph states a legal conclusion not requiring a response regarding Vinci's

FBAR filing obligation related to the Mosquetero accounts.  Out of an abundance of caution, the

allegation is denied.  The allegations in the remainder of the paragraph are denied for lack of

3

sufficient information to form a belief therein.

25.     The allegation that Vinci was the listed, nominal owner of the three "accounts" shown at Stanford International Bank in St. Johns, Antigua is admitted.  To the extent the allegation implies Vinci's investment in Stanford International Bank was actually held or managed in real, and not fictional, "accounts," the allegation is denied.

26.     The allegation is admitted.

27.     The allegations are denied for lack of sufficient information to form a belief therein.

28.     The allegations are denied for lack of sufficient information to form a belief therein.

29.     The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied.

30.     The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied.

31.     The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied.

32.     The allegation that Vinci filed an initial submission letter in the IRS 2011 Offshore Voluntary Disclosure Initiative—based on information then available to him—is admitted.  The allegation that this submission letter disclosed accounts managed by Citi Private Trust, the Stanford Accounts, and the Citi Venezuela Accounts is also admitted.  The remainder of the allegations in the paragraph are denied.

33.     The allegations are denied.

34.     The allegations are denied.

4

35.     The allegation that Vinci filed IRS Forms 5471 (Information Returns for U.S. Persons with Respect to Certain Foreign Corporations) while in the 2011 IRS Offshore Voluntary Disclosure Initiative, as a requirement of participation in that Initiative, is admitted. The remainder of the allegations in the paragraph are denied for lack of sufficient information to form a belief therein.

36.     The allegation that Vinci filed amended returns and Reports of Foreign Bank and Financial Accounts ("FBARs") in the OVDI, as a requirement of participation in the Initiative, is admitted.  The remainder of the allegations in the paragraph are denied.

37.     The allegations are generally admitted; however, the allegation that the filings were "untimely" within the context of Vinci's participation in the OVDI is denied. The filings were made as a requirement of participation in the Initiative.

38.     The allegation is admitted; however, Vinci's representatives notified the IRS of the location of the Mosquetero accounts in the United States in 2012, only a few months into the OVDI process, as relevant information became available.

39.     The allegations are admitted.

40.     The paragraph states legal conclusions not requiring a response. To the extent the allegations contain factual assertions, the allegations are denied.

41.     The allegations are denied for lack of sufficient information to form a belief therein.

42.     The allegation that notice and demand were sent is admitted.  To the extent the allegation implies the amount is owed, the allegation is denied.

43.     The allegation that Vinci has not paid the assessment at issue is admitted.  The remainder of the paragraph states legal conclusions not requiring a response. Out of an

abundance of caution, the allegations are denied.

44.     The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied.

45.     The paragraph states legal conclusions not requiring a response. Out of an abundance of caution, the allegations are denied.

Prayer for Relief (A) and (B): To the extent the prayer for relief requires a response, the prayer for relief is denied.

## AFFIRMATIVE DEFENSE NO. 1:
## VINCI DID NOT ACT WILLFULLY REGARDING THE ACCOUNTS AT ISSUE

46.     The administrative record and Complaint fail to establish any factual basis for assertion of a willful FBAR penalty against Vinci. 31 U.S.C. § 5321(a)(5)(C) imposes a civil money penalty for willful failures to file certain reports required to be filed under 31 U.S.C. § 5314, including the FBAR. As outlined in the statute, the amount of the willful penalty may be 50 percent of the high balance in the account at the time of the alleged failure to file the FBAR form. However, even assuming that a taxpayer is found to act willfully, under 31 CFR § 1010.820(g), the Secretary has limited the penalty to be enforced to $100,000. If a taxpayer does not act willfully—for example, if he failed to file the FBAR because he did not know the form existed or was required to be filed—the civil money penalty under 31 U.S.C. § 5321 shall not be greater than $10,000.

47.     Willfulness is a required element of the penalty asserted by the Government against Vinci. The Government's effort to reduce the FBAR penalties to judgment fails because the Government cannot meet its heavy burden to establish a necessary element for enforcement of the penalty—that Vinci knew of and understood the FBAR filing obligation and willfully failed to file

DM_US 162799754-3.103729.0011

the form for the relevant tax years.

48.     Pietro Vinci will be 90 years old next year, in 2020.  Vinci was born in Italy in 1930. He did not finish grade school because his Sicilian village was bombed during World War II. Vinci fled, and lived in the mountains with his family. Vinci had no other formal schooling. He has never been able to proficiently speak, read, or write in English. When interviewed by the IRS, an interpreter was used in order for Vinci to communicate with the IRS.

49.     At the age of 25, Vinci moved to Venezuela, where he met his wife Liliane. Liliane was born outside of Normandy, France. Together with her mother, she lived through her homeland being occupied by Nazi Germany, the hiding by her mother of those deemed "undesirable" by the SS, the bombings by the Allied forces, D-Day and the liberation of her town. After the war, Liliane and her family left France and moved to Venezuela.

50.     Mr. and Mrs. Vinci were married in Venezuela in 1963.  Together, they started a family and a new life in Venezuela, where they lived for the majority of their life. Despite such limited education, Vinci worked hard to support his family, and was able to start a small business which sold automobile tires, belts and other industrial parts and supplies. Over the years, his business grew and became successful. He lived modestly and saved as much as he could.

51.     Vinci first opened an account with Citibank when he was living in Venezuela.  He was approached there by representatives of the bank and opened a local account in Venezuela upon their advice.

52.     Over the years, Mr. and Mrs. Vinci began spending more time in Miami, Florida for several reasons: because Mrs. Vinci's mother was living in Miami, because Vinci received advanced medical treatment for his heart condition in Miami, and because of the increasingly dangerous conditions in Venezuela. Ultimately, after their home in Venezuela was burglarized

7

several times and they were held at gunpoint in their own home, they decided to move to the United States. Mrs. Vinci moved to the United States first while Vinci continued to work in Venezuela. While Vinci visited the United States during the period of time Mrs. Vinci lived in the United States, Vinci did not reside in the United States until sometime between 2003 to 2005.

53.     Vinci left behind his home, rental properties and his bank accounts in Venezuela because he was unable to sell the properties or liquidate the accounts. Vinci still has a home in Venezuela, as well as another property, but the values have gone down because there is no one to buy them. Even the money he has in Venezuela, which is in bolivares, is not worth its face value because he is unable to take the bolivares out of Venezuela.

54.     When the political situation began deteriorating in Venezuela, Citibank advised Vinci to move his savings out of the country. At Citibank's recommendation, he went to Citibank in Miami, and met with an attorney referred to Vinci by Citibank. They advised him that his savings would be more secure if the bank account was held in a foreign corporation.  Citibank and the recommended attorney handled all necessary paperwork, and Vinci signed whatever he was asked to sign.

55.     At all times, Vinci believed the "Mosquetero" accounts described in the Complaint were located in the United States, and Citibank has confirmed that the accounts are in fact in the United States.  Vinci has never traveled to Scotland, and has only travelled to Switzerland once for vacation. Vinci was generally unaware of the connection of the Mosquetero accounts to these countries.  The bank and the recommended attorney never advised him of any offshore reporting requirements related to the accounts or what reporting requirements Vinci would have if he ever became a U.S. resident.

56.     Vinci travelled to the United States on a visitor visa until he became a U.S. green card holder when he was in his 70s.  Vinci has never worked or earned any salary in the United States. He simply did not know that he was required to file a tax return in the United States, when he was not earning any income there. All of the funds in his accounts at Citibank are monies that he earned and saved over a lifetime while living in Venezuela.

57.     Vinci first became aware that he may have a tax reporting obligation in the United States after meeting with an immigration lawyer when he sought to become a United States resident.  Upon learning of the U.S. filing obligations, Vinci promptly engaged U.S. counsel and applied to participate in the IRS 2011 Offshore Voluntary Disclosure Initiative, and was cleared to enter into that program.

58.     Vinci entered the IRS's OVDI in 2011.  When he entered the program, he was required to file an intake letter describing—to the best of his knowledge with the information he had available—the location and nature of his offshore accounts.  He completed and signed that letter to the best of his ability.  It was entirely common—indeed, routine—for taxpayers to learn new information about their offshore holdings upon receiving account statements from financial institutions abroad for the first time while participating in the OVDI.  That is why the IRS's intake letters themselves only required a taxpayer's certification of the contents "to the best of [their] knowledge and belief", not to an absolute certainty.  When Vinci and his advisors learned new information in the course of participation in the program, they disclosed that information to the IRS.

59.     Vinci and his advisors took all steps to fully comply with the requirements of the IRS OVDI, including filing tax returns and Forms 5471.  Vinci and his advisors participated in the program in good faith in an attempt to resolve any outstanding tax filing obligations regarding his

9

financial holdings.

60.     During his participation in the OVDI, Vinci and his advisors gathered more complete information from his banks.  This information revealed that the Mosquetero accounts were in fact located in the United States.  Because the accounts are domestic, they are not subject to FBAR reporting requirements and are not subject to the penalty at issue.  Vinci and his advisors provided documentation of the domestic nature of the accounts to the IRS in the OVDI in 2012, and discussions on this issue continued for several years, through the IRS Appeals process.

61.     Upon receiving the Mosquetero information from Vinci's counsel, the IRS failed to concede its ramifications for purposes of Vinci's FBAR penalty.  Instead, Vinci was given the bureaucratic "run-around" for several years.  The IRS delivered a closing agreement to Vinci in June 2012—a document which would have fully and finally resolved all issues. Vinci signed the agreement and made payments required under it, but the IRS refused to counter-sign the agreement.

62.     Between June 2012 and March 2013, the IRS sent Vinci two more closing agreements, fundamentally changing the terms of their settlement, and asserting penalties inconsistent with the factual record based on information Vinci and his counsel provided.  At that point, Vinci was faced with two undesirable choices—pay a penalty on the Mosquetero accounts that was patently contrary to law, or "opt out" of the 2011 OVDI and take his chances with discretionary relief within the IRS.  In March 2013, Vinci opted out of the 2011 OVDI.

63.     The IRS's "opt out" process proved to be equally unproductive.  After two more years of consideration of Vinci's evidence regarding the Mosquetero accounts, the IRS imposed a willful FBAR penalty and closed his case without reaching an agreement on the FBAR penalty.

DM_US 162799754-3.103729.0011

64.     According to the rebuttal given by the examining agent in IRS Appeals, the IRS's case for Vinci's willfulness regarding the FBAR penalty rests upon his success in business in Venezuela earlier in his life, the fact that Vinci's Venezuelan accounts were never actually frozen or confiscated by the Chavez regime in Venezuela, and the fact that he sought and received legal and tax advice over the years.  These facts are simply insufficient to establish that Vinci acted willfully. Given Vinci's personal background and the cursory treatment he received from the IRS during this process, the IRS's stated reasons supporting its willfulness finding strain credulity.

65.     There is no question that Vinci is unschooled in the details of United States tax law and its offshore financial reporting system.  He immigrated to the United States in his 70s, with little to no formal education, and no ability to read and write in English.  He could not even read the U.S. tax forms he would have been required to sign and file.  Doing what any reasonable person would do when managing their money, he asked qualified professionals to advise him—his accountants, his bankers, and the attorney referred by his bankers.  None of these individuals advised Vinci that he had United States filing requirements in the time period at issue.  Moreover, Vinci was not earning U.S.-source income and was not employed here.  The United States has historically been unique in its global approach to taxation, under which all income earned by a United States taxpayer anywhere is potentially subject to taxation here.  Individuals who are unfamiliar with this system would not necessarily understand that a United States residence would make all of their income potentially reportable and taxable in the United States.  To impute a high level of sophistication and knowledge in U.S. tax matters to Vinci is simply unreasonable and unsupported by the facts.

66.     Further, the IRS's arguments regarding the Venezuelan regime are baffling.  Vinci fled oppressive political regimes not once but twice in his lifetime.  He left the home he had known

11

in Venezuela for the majority of his adult life after having been burglarized and held at gunpoint. The fact that the Chavez regime did not also confiscate Vinci's accounts is perhaps the only silver lining to come out of this experience. In fact, Vinci's personal history greatly supports the reasonableness of his concerns about keeping his money in an unstable political environment. To use this history as evidence of his willfulness makes little sense.

67.     As discussed, the administrative record is devoid of any reasoning supporting a finding that Vinci acted willfully.  In fact, the Internal Revenue Service's guidance regarding mitigation of the FBAR penalty fails to take into account the specific facts and circumstances of each case and focuses solely on the high balance in the relevant financial accounts.  *See* Internal Revenue Manual 4.26.16-1. Further, even if the IRS had made a supportable finding of willfulness, the amount of the approved FBAR penalty exceeds the regulatory authority of the Secretary under 31 CFR § 1010.820(g). Accordingly, the IRS assessment of the FBAR penalty against Vinci is arbitrary, capricious, and an abuse of discretion under 5 U.S.C. § 706.

## AFFIRMATIVE DEFENSE NO. 2:
## THE PENALTY ASSESSMENT RELATES IN LARGE PART TO DOMESTIC ACCOUNTS NOT SUBJECT TO PENALTY AS A MATTER OF LAW

68.     31 U.S.C. § 5321(a)(5)(C) imposes a civil money penalty for willful failures to file certain reports required to be filed under 31 U.S.C. § 5314, including the FBAR. Under the FBAR filing instructions, an FBAR must be filed when a taxpayer has a "financial interest in or signature authority over foreign financial accounts" in excess of $10,000.

69.     Under the definitions in the FBAR instructions, a "foreign financial account" is "a financial account located outside of the United States."  Moreover, "account maintained with a branch of a foreign bank that is physically located in the United States is not a foreign financial account."

12

70.     The Mosquetero accounts described in the Complaint—forming a large majority of the funds subject to penalty here—are domestic accounts.  Citibank has confirmed these accounts are located in the United States.  No FBAR reporting requirement applied to these accounts.  Any FBAR penalty assessed related to these accounts is invalid as a matter of law.

## AFFIRMATIVE DEFENSE NO. 3:
## THE PENALTY ASSESSMENT IS PROCEDURALLY DEFECTIVE

71.     The IRS has been delegated civil enforcement authority over the FBAR.  See 31 CFR § 1010.810(g) (referencing a Memorandum of Agreement between the Financial Crimes Enforcement Network ("FinCEN") and the IRS).  The IRS has established specific procedures for the examination, approval, and assessment of the FBAR penalty under 31 U.S.C. § 5321.  See Internal Revenue Manual 4.26.16 and 4.26.17.  For example, a willful FBAR penalty must be reviewed by the SB/SE Counsel FBAR Coordinator, and findings must be made supporting the assertion of the penalty. *See* Internal Revenue Manual 4.26.17.4.3.  The taxpayer has the right to administratively appeal an initial determination that the penalty should be assessed, and an IRS group manager must also make findings when approving the penalty. *See* Internal Revenue Manual 4.26.17.4.6. In addition, a series of notices and letters must be sent to the taxpayer before the penalty is assessed.  *See* Internal Revenue Manual 4.26.17.

72.     The Government's efforts to collect an FBAR penalty from Vinci fail because the IRS's assessment of the FBAR penalty was procedurally defective.  Based on the incomplete correspondence and notices that Vinci and his counsel have received, it appears that the IRS may not have followed its own procedures in making the assessment of the FBAR penalty.  As referenced above, the notices and reports that Vinci received contain little to no reasoning supporting a willful FBAR penalty, also rendering the assessment procedurally defective.  Because

DM_US 162799754-3.103729.0011

the IRS did not validly assess the FBAR penalty before the expiration of the relevant statute of limitations, the Government cannot reduce this penalty to judgment.

**AFFIRMATIVE DEFENSE NO. 4:**
**THE PENALTY ASSESSMENT IS AN EXCESSIVE FINE OR HAS BEEN**
**ERRONEOUSLY ASSESSED**

73.     The relevant statutes, 31 U.S.C. § 5321(a) and (b)(1), provide that a willful FBAR penalty of 50 percent of the balance in the relevant financial account may be assessed upon the same funds for each year within a six-year statute of limitations.  As written, the statute essentially allows the Government to assess an FBAR penalty of 300 percent of the highest balance of a financial account—three times the entire value of the account.  A regulation, 31 CFR § 1010.820(g), instructs that any FBAR penalty is "not to exceed $100,000"; however, the current assessment far exceeds this limitation and is in violation of this regulation.

74.     The assessed FBAR penalty has been improperly imposed on domestic United States accounts—the Mosquetero accounts, described above and in the Complaint.  To the extent the assessed penalty includes amounts attributable to the Mosquetero accounts, the penalty has either been erroneously assessed or, alternatively, is an excessive fine.

75.     The FBAR penalty under 31 U.S.C. § 5321 and the penalties asserted under the Internal Revenue Code are excessive, punitive, and disproportionate to any harm suffered by failure to file the relevant forms disclosing the accounts.  In short, 31 U.S.C. § 5321(a)(5)(C)(i), as written and as applied to Vinci, violates the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, and the penalty should not be enforced for this reason. Moreover, the assessment is in excess of the Government's regulatory authority under 31 CFR § 1010.820(g).

14

WHEREFORE, for all these reasons, Defendant Pietro Vinci prays that the Court dismiss the Complaint with prejudice and bar the United States of America from reduction of the improper penalty assessed against him to judgment.  Defendant additionally requests all such further legal and equitable relief to which he may be entitled.


Dated:  November 1, 2019

> Respectfully submitted,
>
> McDERMOTT WILL & EMERY LLP
>
> /s/ Laura L. Gavioli
> LAURA L. GAVIOLI (*pro hac vice*)
> E-mail:  lgavioli@mwe.com
> Telephone:  (212) 547-5314
> Facsimile:  (972) 584-6162
> KRISTIN K. GOING
> State Bar No. 26999
> E-mail:  kgoing@mwe.com
> Telephone:  (212) 547-5429
> Facsimile:  (646) 417-7313
> 340 Madison Avenue
> New York, NY 10173
>
> DANIEL J. BELL (*pro hac vice*)
> 500 North Capitol Street, NW
> Washington, DC 20001
> Telephone:  (202) 756-8363
> E-mail:  djbell@mwe.com
>
> ATTORNEYS FOR DEFENDANT
> PIETRO VINCI

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 1, 2019, I electronically filed the foregoing pleading with the Clerk of the Court using the ECF system which will send notification of the filing to all counsel of record.

/s/ Laura L. Gavioli
Laura L. Gavioli

DM_US 162799754-3.103729.0011